# 22-521-cr(L)

## 22-674-cr(CON), 22-1160-cr(CON), 22-1324-cr(CON), 22-1390-cr(CON)

IN THE

# United States Court of Appeals

### FOR THE SECOND CIRCUIT



UNITED STATES OF AMERICA,

*Appellee,*

*v.*

DESTINE CALDERON, TYIESE WARREN, AKA LOOSE SCREW, JACQUON BENEJAN, AKA BLICK, UNDREA KIRKLAND, AKA SPOODA,

*Defendants,*

MARQUIS ISREAL, AKA GARF, DIOMIE BLACKWELL, AKA YAMO, JACQUON BENEJAN, AKA BLICK, ASANTE GAINES, AKA SANTI, LAHEEM JONES, AKA HEEMIE,

*Defendants-Appellants.*

———————————

*On Appeal from the United States District Court for the District of Connecticut*

---

## BRIEF AND SPECIAL APPENDIX FOR DEFENDANT-APPELLANT LAHEEM JONES PURSUANT TO *ANDERS V. CALIFORNIA*, 386 U.S. 738 (1967)

---

James M. Branden
LAW OFFICE OF JAMES M. BRANDEN
*Attorneys for Defendant-Appellant Laheem Jones*
80 Bay Street Landing, Suite 7j
Staten Island, New York 10301
212-286-0173

# TABLE OF CONTENTS

*Page No.*

Table of Authorities. . . . . . . . . . . . . . . . . . . ii

Statement of Subject Matter and Appellate Jurisdiction. . . . . 1

Statement of the Issue Presented for Review . . . . . . . . . 2

Statement of the Case . . . . . . . . . . . . . . . . . . 2

    The Indictment and the Guilty Plea Agreement . . . . . . . 2

    The Guilty Plea Proceeding . . . . . . . . . . . . . . 3

    The Sentencing Memoranda . . . . . . . . . . . . . . 6

    The <u>Fatico</u> Hearing . . . . . . . . . . . . . . . . . 6

        The Government Case . . . . . . . . . . . . . . 6

        The Defense Case. . . . . . . . . . . . . . . . 9

    The Sentencing Hearing . . . . . . . . . . . . . . . 10

ARGUMENT

    THE APPEAL SHOULD BE DISMISSED
    BECAUSE THE RECORD PRESENTS NO
    NON-FRIVOLOUS ARGUMENTS. . . . . . . . . . . . . . . 12

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . 15

i

## TABLE OF AUTHORITIES

*Page No.*

Cases

Anders v. California,
    386 U.S. 738 (1967) . . . . . . . . . . . . . . . . . . 12

Hill v. Lockhart,
    474 U.S. 52 (1985) . . . . . . . . . . . . . . . . . . 13

Massaro v. United States,
    538 U.S. 500 (2003) . . . . . . . . . . . . . . . . . . 13

Strickland v. Washington,
    466 U.S. 688 (1984) . . . . . . . . . . . . . . . . . . 13

United States v. Gomez-Perez,
    215 F.3d 315 (2d Cir. 2000) . . . . . . . . . . . . . . 12

United States v. Salameh,
    152 F.3d 88 (2d Cir. 1998) . . . . . . . . . . . . . . 13

Cont'd

*Page No.*

**Federal Statutes**

18 U.S.C. §1959(a)(5) . . . . . . . . . . . . . . . . . 1, 2

18 U.S.C. §1959(a)(6) . . . . . . . . . . . . . . . . . 2

18 U.S.C. §1962(d) . . . . . . . . . . . . . . . . . . 1, 2

18 U.S.C. §3231 . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. §3742(a) . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §1291 . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §2106 . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §2255 . . . . . . . . . . . . . . . . . . . . 13

**Federal Rules of Procedure**

Fed.R.Crim.P. 11 . . . . . . . . . . . . . . . . . . . 3-5

Fed.R.Crim.P. 32 . . . . . . . . . . . . . . . . . 11-12, 14

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
----------------------------------------x

UNITED STATES OF AMERICA,

          Appellee,                Docket No.
                                     22-521-cr

      -against-

LAHEEM JONES,

          Defendant-Appellant.

----------------------------------------x

## BRIEF FOR APPELLANT LAHEEM JONES

### STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Subject matter jurisdiction in the district court was conferred by 18 U.S.C. §3231, granting original and exclusive jurisdiction of all offenses against the United States. Appellant was convicted of violating such laws, to wit, 18 U.S.C. §§1959(a)(5), 1962(d) (A. 523).[1] A notice of appeal was filed *pro se* on June 27, 2022 (A. 529).[2] Jurisdiction is invoked in this Court pursuant to 18 U.S.C. §3742(a) and 28 U.S.C. §§1291 and 2106.

---

[1] Numbers in parentheses following "A." refer to pages from the Appendix filed herewith.

[2] Mr. Jones was sentenced on April 7, 2022 (A. 361). The judgment was filed on May 2, 2022 (A. 523). The *pro se* notice of appeal was mailed on June 24, 2022 (A. 530) and filed in the district court on June 27, 2022 (A. 529). Thus, the notice of appeal was filed out of time. See Fed.R.App.P. 4(b).

## STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

Whether the appeal should be dismissed because the record presents no non-frivolous arguments.

## STATEMENT OF THE CASE

The Indictment and the Guilty Plea Agreement

By Indictment (D. Ct., Docket No. 20 Cr. 126 (JBA)), Mr. Jones was charged in three counts with racketeering conspiracy in violation of 18 U.S.C. §1962(d) (count one); violence (assault with a dangerous weapon and attempted murder) in aid of racketeering in violation of 18 U.S.C. §§1959(a)(3), 1959(a)(5) (count two); and conspiracy to commit violence (murder and assault with a dangerous weapon) in aid of racketeering in violation of 18 U.S.C. §§1959(a)(5), 1959(a)(6) (count four) (A. 25-35). It was generally alleged that Mr. Jones was a member of a Bridgeport street gang known as the "Greene Homes Boys" or the "Hots" and that, on January 27, 2020, he and other members of the gang shot at and attempted to kill members of a rival gang, known as the East End gang (A. 25-35). After jury selection, Mr. Jones pleaded guilty to counts one and two pursuant to a plea agreement with the government (A. 18).

The plea agreement listed the "essential elements" of counts one and two (A. 53-54). It also identified the statutory penalties for those counts concerning imprisonment, supervised release, fines, special assessments and restitution (A. 54-55). The maximum

statutory range of imprisonment was 30 years (A. 54). As to the sentencing guidelines, the parties agreed that the total adjusted offense level was 39 and presumed that Mr. Jones was in criminal history category V, resulting in a range of imprisonment of 360 months to life, capped, however, by the statutory maximum of 360 months. Thus, 360 months was the guidelines range of imprisonment (A. 56-57). Further, Mr. Jones waived his right to appeal or collaterally attack his sentence if the court imposed a sentence that "does not exceed 360 months of imprisonment, a 3-year term of supervised release, restitution, [and] a $200 special assessment" (A. 59).

As part of the plea agreement, Mr. Jones stipulated that:

> (1) the narcotics quantity for which the defendant is responsible, as a result of his role in the conspiracy, is at least 60 kilograms but less than 80 kilograms of converted drug weight; (2) from approximately 2014 until the present, Laheem Jones was a member and/or associate of the Greene Homes Boys, a.k.a. GHB, a.k.a. G$B; . . . . (4) on or about January 27, 2020, the defendant agreed with other fellow GHB enterprise members and Original North End ("O.N.E.") Allies that they would retaliate against opposition gang members, Trevon Wright, a.k.a. "Tre," Jaheim Warren a.k.a. "JD," and all persons with them when they left State Superior Court by killing them in order to increase or maintain standing within GHB (A. 56).

The Guilty Plea Proceeding

At the change-of-plea proceeding, the district court complied with the prerequisites set forth in Rule 11 of the Federal Rules of

3

Criminal Procedure, as follows:

11(b)(1): Mr. Jones was placed under oath and he was addressed personally (A. 70).

11(b)(1)(A): Mr. Jones was advised that his statements, if untrue, were subject to the penalties of perjury or making a false statement (A. 70).

11(b)(1)(B)): Mr. Jones was advised that he had the right to plead not guilty and to persist in such plea (A. 85-87).

11(b)(1)©: Mr. Jones was informed that he had the right to a speedy and public trial (A. 87).

11(b)(1)(D): Mr. Jones was informed that he had the right to counsel at trial and every other stage of the proceedings, and to have one appointed if he could not afford counsel (A. 87).

11(b)(1)(E): Mr. Jones was advised that he had the rights to see and hear all of the witnesses and to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify, and to present evidence and compel witnesses to appear (A. 87-88).

11(b)(1)(F): Mr. Jones acknowledged that he was waiving his trial rights if the court accepted his guilty plea (A. 91).

11(b)(1)(G): The court described the nature of the charges to which Mr. Jones was pleading guilty (A. 110-11).

11(b)(1)(H): The maximum penalties were reviewed, including those pertaining to imprisonment, supervised release, a fine and a

special assessment (A. 93, 103-04).

11(b)(1)(I): The crimes to which Mr. Jones pleaded guilty did not carry mandatory minimum terms of imprisonment.

11(b)(1)(J): Forfeiture was not a potential penalty in this case.

11(b)(1)(K): Mr. Jones was advised that the court will order restitution if claims were made (A. 100).

11(b)(1)(L): Mr. Jones was advised that he was required to pay a special assessment of $100 per count (A. 93).

11(b)(1)(M): The court indicated that, at sentencing, it was obligated to calculate the sentencing guidelines range and then to consider other factors set forth in federal law (A. 113).

11(b)(1)(N): The appeal waiver as to all parts of the sentence was reviewed (A. 98-99, 107).

11(b)(1)(O): Mr. Jones informed the court that he was born in Connecticut. Nonetheless, the court advised that if that proved incorrect, there may be adverse immigration consequences, including removal from the United States (A. 90).

11(b)(2): Mr. Jones informed the court that he was changing his plea voluntarily and that his guilty plea did not result from any promises (other than those in the plea agreement) or threats made to him (A. 101).

11(b)(3): The court required that Mr. Jones provide a factual basis for the guilty plea (A. 113-20).

5

The Sentencing Memoranda

The Office of Probation determined that the total offense level was 43 (differing from the plea agreement of 39 finding no credit for acceptance of responsibility and a two-level enhancement for obstruction of justice) and that Mr. Jones was in criminal history category III (not V as set forth in the plea agreement), for a total range of imprisonment of life, capped, however, at 360 months. In his sentencing memorandum, Mr. Jones asked the court to impose a five-year term of imprisonment (A. 153). The government sought a term of at least twenty years (A. 161).

The Fatico Hearing

The court held a Fatico hearing to determine whether Mr. Jones was a founding member of the Greene Homes Boyz gang and whether he knew of the planned attempted murders at the Bridgeport courthouse on January 27, 2020 (215, 219).

The Government Case

In December 2020, John Andrews, a Lieutenant in the Bridgeport Police Department, transported "KJ" from his place of incarceration to the Office of the United States Attorney in Bridgeport to interview him about a shooting in 2015 by one Undrea Kirkland (A. 230-31). KJ, the victim, said that he had been a member of the "150 Group," a rival to GHB, whose members, in 2015, included Kirkland and Mr. Jones (A. 232). According to KJ, Mr. Jones moved into the Greene Homes project in 2012 and "started" the GHB street

6

gang (A. 233).

According to FBI Special Agent Andrew Pappas, from 2016 to 2020, Bridgeport contained several rival street gangs (A. 245-47). GHB and O.N.E. were allies (A. 246). Their rivals included the East End Gang (A. 246). On November 4, 2021, Pappas was present for a proffer session with a cooperating East End Gang member (A. 247). The cooperator said that Mr. Jones was the "founder" of GHB and that he had purchased marijuana from him in 2011 or 2012 in the Greene Homes project (A. 248).

ATF Special Agent Barrett Hyde conducted an investigation of the January 27, 2020 courthouse shooting by members of GHB against members of East End Gang (A. 264-65). According to Hyde, the courthouse shooting was motivated by the murder of one Myreke Kenion, a GHB associate, the night before (A. 265).

On January 27, at 8:43 a.m., Mr. Jones, then 25 years old, sent a message to "bro," reading "I guess three-plus hours before the shooting starts" (A. 402, 452). At 10:59 a.m., Asante Gaines of GHB messaged Joshua Gilbert of O.N.E. that he was "putting people on the news," meaning murdering them, and was focused on "Tre and JD at court" (A. 285-86).[3] At 11:26 a.m., Mr. Jones was with Gaines in the Greene Homes project when Gaines received a telephone call from a GHB inmate, Shajuan Perry (A. 287, 314).

---

[3] As noted earlier, "Tre" is the nickname for Trevon Wright and "JD" is the nickname for Jaheim Warren.

Gaines left the Greene Homes project around 11:36 and Mr. Jones continued to talk to Perry for a bit ((A. 292-93). Gaines and others arrived in the vicinity of the courthouse at 11:37 in a blue Volkswagen Golf (A. 293, 327). From there, he Facetimed Mr. Jones in the project at 12:05 (62 seconds), 12:07 (19 seconds) and 12:08 p.m. (51 seconds) (A. 296-97). At 12:11, from inside a Subaru Forester, Marquis Israel and Tyiese Warren, both GHB members, fired 23 shots at Tre and JD after they exited the courthouse and entered a black Chevrolet Impala with two waiting passengers (A. 298, 406, 411). Mr. Jones was somewhere in the general vicinity in a white Volkswagen rented by his cousin, Angela (A. 354, 409). Phone records indicated that Mr. Jones traveled west immediately thereafter (A. 354). From 12:14 to 12:17, Mr. Jones was captured on video surveillance tape at a market close to the courthouse purchasing bleach and lighter fluid (A. 300). He drove off in the white Volkswagen (A. 300-01). Mr. Jones and Gaines Facetimed again at 12:20 (19 seconds), their first communication following the shootings (A. 301). Mr. Jones confirmed the purchases of bleach and lighter fluid and that he was en route to a gas station (A. 302). At the gas station, he was caught on surveillance footage purchasing a gas can and filling it with gasoline (A. 302). Between 12:34 and 12:37, Gaines and Mr. Jones communicated and agreed to meet at a Walmart in Naugatuck (A. 304). Shortly thereafter, at Walmart, the blue Volkswagen Golf, the Subaru

8

Forester, the white Volkswagen and another GHB vehicle were spotted (A. 305). The caravan traveled north on Route 8 (A. 305). Somewhere farther north in Naugatuck, the bleach, gasoline and lighter fluid were used to set the Forester afire (A. 303, 305).

During his broader investigation of GHB, Hyde learned that Mr. Jones was a member of GHB in 2010 and 2011 and started recruitment efforts at the Greene Homes project (A. 267). In November 2020, Hyde met in a proffer session with a cooperating witness who said that he had been recruited to join GHB by Mr. Jones in 2010 (A. 267-69, 344-45). At some point thereafter Mr. Jones served a prison term (A. 271-72). When he was released, he was provided a firearm, which, according to the cooperator, he always carried (A. 273).

<u>The Defense Case</u>

<u>Anthony</u> <u>Marshall</u> <u>Thompson</u>, was made aware that Mr. Jones was in prison in 2012, when Marshall Thompson was released from a fifteen-year prison stint (A. 365, 369). Mr. Jones was released in March 2019 and taken to his Aunt's residence in Waterbury, where he was placed on home confinement (A. 366). Marshall Thompson – who by then worked in violence prevention and "mentored" Mr. Jones in conjunction with the Probation Office – did not think Mr. Jones could be the "head" of GHB because he was "always" at his Aunt's (A. 372). Even after six months when he moved to live with his girlfriend in Bridgeport and was relieved of the home confinement

condition, Mr. Jones was not active in the gang; he was, rather, focused on reintegration in society at large, said Marshall Thompson (A. 373, 377). Nor did Marshall Thompson know Mr. Jones to have lived in the Greene Homes project (A. 374).

<u>Brantley Roland</u> was Mr. Jones's cousin (A. 422-23). He believed that Mr. Jones lived in the Greene Homes project from 2012 for a period of seven years (A. 423). Roland did not believe Mr. Jones founded GHB (A. 423). GHB "existed far before" (A. 430).

<u>The Sentencing Hearing</u>

The court afforded the parties, and Mr. Jones, opportunities to be heard with regard to the <u>Fatico</u> hearing issues and the factors set forth in 18 U.S.C. §3553(a) (A. 391-503). The court also heard from Mr. Jones (A. 503-10).

As to the <u>Fatico</u> issues, the court found that the government did not prove that Mr. Jones was the founder of GHB (A. 511). The government, however, established by a preponderance of the evidence that Mr. Jones agreed with his fellow GHB and O.N.E. gang members to retaliate against Tre and JD and whoever was with them as they left the courthouse on January 27 (A. 511). Further, Mr. Jones was undeserving of acceptance of responsibility as he pleaded guilty late, two days into jury selection, and, by pressing the issue of his knowledge and participation in the January 27 shootings to a hearing, Mr. Jones denied relevant conduct (A. 512).

After addressing the §3553(a) factors, the court sentenced Mr.

Jones to a term of imprisonment of 100 months on count one and 90 months on count two, to be run consecutively, for a total term of imprisonment of 190 months (A. 516).  He was also sentenced to a term of three years' supervised release and a $200 mandatory surcharge (A. 516-518).  Finally, the court advised Mr. Jones of his right to appeal (A. 519).

A proper judgement dated April 28, 2022, was filed in the clerk's office on May 02, 2022 (A. 523-28).

At sentencing, the district court complied in all respects with Rule 32(I), (j), and (k) of the Federal Rules of Criminal Procedure, as follows:

32(i)(1)(A):  The court verified that Mr. Jones and his attorney had reviewed the final presentence report (A. 215-16).

32(i)(1)(B): The court did not rely on information *dehors* the presentence report so it was not required to summarize it.

32(i)(1)©: The court allowed the parties' attorneys to comment on the presentence report and to make arguments in support of an appropriate sentence (A. 391-503).

32(i)(1)(D): The court allowed the defense to make additional objections to the presentence report (A. 219).

32(i)(2): The Court held a <u>Fatico</u> hearing to address factual disputes.

32(i)(3)(A): The court accepted the undisputed portions of the presentence report as fact (A. 218-19).

11

32(i)(3)(B): As to the disputed portions of the presentence report, the Court made a ruling (A. 511-12).

32(i)(4)(A):  The Court allowed both parties' attorneys to speak (A. 391-503).  It also addressed Mr. Jones personally and received his rather extensive remarks (A. 503-10).

32(i)(4)(B): The court inquired about notification of the sentencing hearing to victims (A. 209).  The government indicated that notification was made but no victims would personally appear (A. 209).

32(i)(4)©: Neither party moved to make an *in camera* statement.

In keeping with subsection (j)(1) of Rule 32, the Court advised Mr. Jones that he had the right to appeal his conviction and sentence and that he had the right to ask permission to waive appeal costs if he could not afford them (A. 519).  Finally, in keeping with subsection (k) of Rule 32, the court filed a proper judgment (A. 523-28).


**ARGUMENT**

THE APPEAL SHOULD BE DISMISSED
BECAUSE THE RECORD PRESENTS NO NON-
FRIVOLOUS ARGUMENTS

There are no non-frivolous issues to be raised on the instant appeal.  See Anders v. California, 386 U.S. 738 (1967); United States v. Gomez-Perez, 215 F.3d 315 (2d Cir. 2000).

As set forth in the Statement of the Case, above (at pages 3-

12

5), the lower court properly administered the guilty plea in accordance with Rule 11(b)(1) - (3) of the Federal Rules of Criminal Procedure, without exception.

There was no showing that counsel's performance was deficient in any material way or somehow fell outside the norm, or that, but for counsel's advice, Mr. Jones would have gone to trial. See Hill v. Lockhart, 474 U.S. 52, 59 (1985) (ineffectiveness established in plea proceeding if, but for counsel's mis-advice, defendant would have proceeded to trial); Strickland v. Washington, 466 U.S. 688, 690 (1984) (claim of actual ineffectiveness requires showing that attorney's conduct fell "outside the wide range of professionally competent assistance" and "but for counsel's unprofessional errors, the result of the proceeding would have been different"). In fact, at the guilty plea proceeding, Mr. Jones made it clear that he had had "adequate communication with [his] attorney for the purpose of considering, understanding, and deciding what to do about the government's renewed plea offer" (A. 73).

In the event Mr. Jones would seek to present any ineffectiveness claim, such a claim would be based at least in part on information not presently on the record and should not be presented on direct appeal, but should, rather, be set forth on a motion pursuant to 28 U.S.C. §2255. See Massaro v. United States, 538 U.S. 500 (2003) ("in most cases a motion brought under §2255 is preferable to direct appeal for deciding claims of ineffective-

13

assistance"); <u>United States</u> v. <u>Salameh</u>, 152 F.3d 88, 161 (2d Cir. 1998) (noting "baseline aversion to resolving ineffectiveness claims on direct review").

Also as set forth in the Statement of the Case, all aspects of the sentencing were procedurally proper. <u>See</u> Fed.R.Cr.P. 32. The presentence report was in all respects consistent with law. <u>See</u> Fed.R.Cr.P. 32© - (d). A <u>Fatico</u> hearing was held with regard to Mr. Jones's objections to the report and the court made appropriate rulings on those objections. All counsel and Mr. Jones were invited to, and did, speak in advance of sentence. Finally, Mr. Jones was advised of his right to appeal.

Mr. Jones was sentenced to 190 months' imprisonment (100 on count one and 90 on count two, run consecutively), three years' supervised release and a $200 special assessment. The terms of imprisonment and supervised release were statutorily authorized, as was the assessment. Further, the overall term of imprisonment was below the guidelines range (360 months) and the term of supervised release was within it (one to three years). The sentence, thus, was legal in all respects.

Nor, in any event, can Mr. Jones raise a challenge to any portion of the sentence imposed because, by the terms of the plea agreement, he waived such a challenge. Indeed, the plea agreement stated that Mr. Jones waived his right to appeal: "if [the] sentence does not exceed 360 months of imprisonment, a 3-year term

of supervised release, restitution [and] a $200 special assessment"
(A. 59). It merits noting that the term of imprisonment actually
imposed was a whopping 170 months below guidelines and the cut-off
as set forth in the waiver provision. The court waived the fine
entirely and restitution was not sought and therefore not ordered
(A. 516, 525). Thus, the waiver precludes any appellate argument
with regard to these components of the sentence imposed, and the
special assessments totaling $200 were mandatory.

Finally, the court filed a proper judgment.

## CONCLUSION

For the foregoing reasons, the appeal should be dismissed.


Respectfully submitted,

/S/ JAMES M. BRANDEN, ESQ.
Attorney for Appellant Laheem Jones

80 Bay Street Landing, Suite 7J
Staten Island, New York 10301
(212) 286-0173

June 29, 2023

SPECIAL APPENDIX

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
----------------------------------------x

UNITED STATES OF AMERICA,

    Appellee,       Docket No.
                  22-521-cr

   -against-

LAHEEM JONES,

    Defendant-Appellant.

----------------------------------------x

## SPECIAL APPENDIX

*Page No.*

The Judgment. . . . . . . . . . . . . . . . . . . . . . . . . **SPA1**

# UNITED STATES DISTRICT COURT
## District of Connecticut

### JUDGMENT IN A CRIMINAL CASE

UNITED STATES OF AMERICA

Case No.: 3:20-cr-00126-JBA-5

USM No.: 04311-509

V.

Rahul Kale and Jocelyn Courtney Kaoutzanis,
Assistant U.S. Attorneys

LAHEEM JONES

Darnell Crosland, Defendant's Attorney

The defendant pled guilty to Count 1 and 2 of the Superseding Indictment.

Accordingly, the defendant is adjudicated guilty of the following offense:

| Title & Section | Nature of Offense | Offense Concluded | Count |
|---|---|---|---|
| Title 18, United States Code, §1962(d) | Racketeering Conspiracy | August 2020 | 1 |
| Title 18, United States Code, §1959(a)(5) | VCAR Attempted Murder / Aiding and Abetting | August 2020 | 2 (Divisible Portion) |

The following sentence is a variance from the U.S. Sentencing Guidelines and is imposed pursuant to the Sentencing Reform Act of 1984.

**IMPRISONMENT**
The Defendant is ordered to be committed to the custody of the Attorney General of the United States to be imprisoned for a period of 100 months as to Count 1 and a period of 90 months as to Count 2, to be served consecutively for a total effective sentence of 190 months.

**SUPERVISED RELEASE**
Upon release from imprisonment, the Defendant shall be on Supervised Release for a term of 3 years as to each count, to be served concurrently.

The Mandatory and Standard Conditions of Supervised Release as attached are imposed. In addition, the following Special Conditions are imposed:

1. You must not communicate, or otherwise interact, with any known or suspected member of any gang, including GHB or O.N.E., without first obtaining the permission of the United States Probation Office.

2. You must participate in an educational and/or vocational services program and follow the rules and regulations of that program. Such programs may include, but are not limited to, high school equivalency preparation, job readiness training, and skills development.

3. You must have no contact, direct or indirect, with the victims or any of their family members by any means, including in person or by telephone, mail, facsimile, text messaging, email, chat rooms, instant messaging, over the Internet, through Facebook or other social media, or through any other form of electronic communication.

4. You must participate in a mental health treatment program recommended by the United States Probation Office. You must follow the rules and regulations of that program. The probation officer, in consultation with the treatment provider, will supervise your participation in the program. You must pay all or a portion of costs associated with treatment based on your ability to pay as recommended and approved by the United States Probation Office.

5. You must submit your person, residence, office, or vehicle to a search, conducted by a United States Probation Officer, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit to a search may be grounds for revocation; you must inform any other residents that the premises may be subject to searches pursuant to this condition.

6. You must participate in a substance abuse treatment program recommended and approved by the Probation Office substance abuse treatment and testing. You must follow the rules and regulations of that program. The probation officer will supervise your participation in the program. You must pay all or a portion of costs associated with treatment based on your ability to pay.

**CRIMINAL MONETARY PENALTIES**

The defendant must pay the total criminal monetary penalties under the schedule of payments as follows:

| | |
|---|---|
| **Special Assessment:** | $200.00 to be paid to the Clerk of the Court via the Bureau of Prisons' Financial Responsibility Program |
| **Fine:** | Waived |
| **Restitution:** | **NA** |

It is further ordered that the defendant will notify the United States Attorney for this District within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this Judgment are paid.

The following Counts have been dismissed:  Counts 1 and 3 of the Indictment; Count 4 and the remaining portion of Count 2 of the Superseding Indictment.

**JUDICIAL RECOMMENDATION TO THE BUREAU OF PRISONS**

The Court recommends that the Defendant be designated to a facility in the Northeast U.S. to facilitate family visitation. The Court further recommends that the Defendant be permitted to participate in the RDAP Program.

Date of Imposition of Sentence:  April 7, 2022

/s/ Judge Janet Bond Arterton

Janet Bond Arterton, United States District Judge

Date: _April 28, 2022_

## CONDITIONS OF SUPERVISED RELEASE

**In addition to the Standard Conditions listed below, the following indicated (■) Mandatory Conditions are imposed:**

## MANDATORY CONDITIONS

(1) You shall not commit another federal, state or local crime.

(2) You shall not unlawfully possess a controlled substance.

(3) You shall refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*

(4) ☐ You must make restitution in accordance with 18 U.S.C.§§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*

(5) ■ You must cooperate in the collection of DNA as directed by the Bureau of Prisons or probation officer. *(check if applicable)*

(6) ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*

(7) ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

## STANDARD CONDITIONS

As part of your Supervised Release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

(1) You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.

(2) After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

(3) You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.

(4) You must answer truthfully the questions asked by your probation officer.

(5) You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

(6)  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.

(7)  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so.  If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

(8)  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

(9)  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

(10) You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).

(11) You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

(12) If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

(13) You must follow the instructions of the probation officer related to the conditions of supervision.

Upon a finding of a violation of Supervised Release/Probation, I understand that the court may (1) revoke supervision and impose a term of imprisonment, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.

(Signed) _____          _____
                    Defendant                                           Date

               _____          _____
                    U.S. Probation Officer/Designated Witness               Date

**RETURN**

I have executed this judgment as follows:

Defendant delivered on _____ to _____ a
_____, with a certified copy of this judgment.

                                          _____
                                               Lawrence Bobnick
                                          Acting United States Marshal

               By     _____
                                               Deputy Marshal